In the Matter of E. F. W. WILDERMUTH, Petitioner, against FIORELLO H. LAGUARDIA, as Mayor of the City of New York, et al., Respondents.

Supreme Court, Special Term, Queens County, September 20, 1943.

*Joseph Lonardo* for petitioner.

*Ignatius M. Wilkinson, Corporation Counsel (Nicholas Bucci of counsel),* for respondents.

COLDEN, J. This proceeding pursuant to article 78 of the Civil Practice Act challenges the legality of the appointment by the Mayor of the City of New York, on May 4, 1943, of Dr. George H. Chatfield as a member of the Board of Education of the City of New York representing the Borough of Queens.

The petitioner contends that under section 866 of the Education Law a person is eligible for appointment as a member of the Board of Education representing a borough of the City of New York, only if he has resided in the borough for which he is to be appointed for a period of at least three years immediately preceding the date of his appointment.

If the petitioner's interpretation of the statute be correct and a three-year residence in the borough is required, then, of course, Dr. Chatfield was ineligible for appointment, since his own affidavit states that he did not become a resident of the borough of Queens until April 4, 1943.

Section 866 of the Education Law, so far as applicable here, reads as follows: " 1. No person shall be eligible to the office of member of a board of education who is not a citizen of the United States and who has not been a resident of the city for which he is chosen for a period of at least three years immediately preceding the date of his election or appointment.

" 2. In a city having a population of one million or more and divided into boroughs, there shall be a board of education consisting of seven members. Two members of such board shall be residents of the borough having the largest population, two shall be residents of the borough having the second largest popula-

tion, and one shall be a resident of each of the other boroughs in such city. The mayor shall appoint such members * * *.''

The petitioner urges on page 27 of his brief: '' The statute needs a judicial construction that shall give life and effect to its obvious intent, which is, that the word ' city ' in the first subdivision must be interpreted to mean *borough,* in the case of a city consisting of boroughs.'' The result sought has been eloquently supported by argument which has much force and is founded upon sound reasons of public policy. Courts, however, must, notwithstanding personal inclinations, '' take the statutes as they find them and construe them according to the canons of interpretation, neither extending their operation beyond the bounds of the legislative intent, nor restricting their obvious application.'' (McKinney's Cons. Laws of N. Y., Book 1, p. 112.) If the legislative intent had been to make a *specific length* of residence in the borough a requirement for eligibility for appointment to the Board of Education, it would have been easy to include a specification in the statute, as was done in other sections found in the Education Law (as for example, § 203, subd. 3; § 210, subd. 3; § 384, subd. 1). For this court to interpret the word '' city '' in the first subdivision of the statute to mean '' *borough* '', as urged by the petitioner, would not constitute mere interpretation of a broad statute but would amount to judicial legislation. If the result sought by the petitioner is to be given effect, the appeal must be made to the Legislature. As the statute now stands, a person to become a member of the Board of Education need be a resident of the borough for which he is to be appointed for *any* length of time so long as he is a resident of the city of which the borough is a part for at least three years and, of course, otherwise meets the qualifications for holding civil office. (Public Officers Law, § 3.)

The petitioner questions, however, the *bona fides* of Dr. Chatfield's residence in the borough of Queens and contends that the record presents a factual question in respect thereto which should be determined by a jury, a demand for which had been served and filed before the return day of the application.

It is, of course, true that under section 1295 of the Civil Practice Act the court is authorized to try issues of fact '' * * * without a jury, before a referee, or, where the proceeding is to review a determination or to compel performance of a duty specifically enjoined by law and a jury trial is demanded on or before the return day, before a court and a jury.'' How-

ever, the statute provides for such a trial only " If a triable issue of fact is duly raised." It is for the court upon the return day of the application to determine from the papers whether a triable issue of fact " is duly raised." (*Matter of New York Central R. R. Co.* v. *Gillespie*, 172 Misc. 112.)

A consideration of the papers herein does not establish the existence of any triable issue. There is no material dispute upon the essential facts. Dr. Chatfield does not claim residence in the borough of Queens prior to April 4, 1943. He states that on that day he moved into the Hotel Whitman in Jamaica, borough of Queens, with the intention of making it his permanent domicile; that since that time he has received his mail and telephone calls at the hotel and has slept there every night with the exception of about a week when he was a patient in a Manhattan hospital; that he has eaten most of his meals at the hotel and when he married shortly after his appointment, his wife joined him in a larger suite at the hotel, and that since September 1, 1943, still larger quarters have been arranged for.

" Residence " as used in the second subdivision of the statute, is synonymous with " domicile ". (*Hislop* v. *Taafee*, 141 App. Div. 40; *Matter of Schley*, 253 App. Div. 818.) " * * * domicile requires bodily presence in [a] place and also an intention to make it one's domicile." (*Matter of Newcomb*, 192 N. Y. 238, 250.) To effect a change in domicile there must be " physical presence at a dwelling place and the intention to make it a home. There must be concurrence of the fact and the intent, the *factum* and the *animus*." (*Matter of Johnson*, 259 App. Div. 290, affd. 284 N. Y. 733.)

Although not stated in so many words, it may be assumed that Dr. Chatfield moved to the borough of Queens for the purpose of making himself eligible for the appointment he later received from the Mayor. Thus the intent to make the said borough his residence is clearly indicated. Merely because he lived in a hotel rather than some other place of abode does not destroy the *fact* of his residence in the borough of Queens prior to his appointment. Since there was no requirement of law that he be a resident of the borough for any specified period of time, his appointment was legal and the petition to remove him must be dismissed. Submit order.